# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**MATTHEW J. MADDOX**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-3407**
**MDD_MJMChambers@mdd uscourts.gov**

August 21, 2023

TO ALL COUNSEL OF RECORD

Re:     *Vernia H. v. Kijakazi*
        Civil No. MJM-22-02126

Dear Counsel:

On August 23, 2022, Plaintiff *Vernia H.* ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's," "Defendant's") final decision to deny Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act.[1] (ECF 1). Plaintiff has filed a brief arguing that SSA's final decision should be reversed or remanded, (ECF 11), and Defendant has filed a brief arguing that the final decision should be affirmed, (ECF 13), to which Plaintiff has filed a reply, (ECF 14). I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under that standard, the SSA's decision will be AFFIRMED.

## I.      BACKGROUND

Plaintiff filed her application for DIB and SSI on September 15, 2014, alleging disability beginning on September 3, 2014. (R. 162, 173). After these applications were denied on May 6, 2015, Plaintiff requested an administrative hearing, which was held on February 7, 2017. (R. 219). Administrative Law Judge ("ALJ") Laureen Penn held a video hearing where Andrew Mathis, a non-attorney representative, represented Plaintiff. (*Id.*) After ALJ Penn denied her claim for DIB and SSI, Plaintiff requested review of the decision on May 12, 2017. (R. 322–24). On April 3, 2018, the Appeals Council granted Plaintiff's request for review and issued an order vacating ALJ Penn's decision and remanding the case to another ALJ. (R. 238–42). In its remand order, the Appeals Council directed the ALJ to ensure that Plaintiff and her representative were given an opportunity "to review and comment on all evidence and to further evaluate [Plaintiff's] alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms…." (R. 22).

ALJ Leisha Self held a new hearing on October 10, 2018, where Plaintiff was represented by Mr. Mathis and Arthur Brown, a vocational expert, appeared and testified. *Id.* The ALJ denied Plaintiff's claim on October 31, 2018, and the Appeals Council denied Plaintiff's request for

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 3, 4).

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 2

review on November 18, 2019. (R. 10–15). Plaintiff then appealed to this Court, commencing an action for judicial review. (*Vernia H. v. Saul*, Civ. No. DLB-20-879 (D. Md. 2020); R. 1666–73).

On May 7, 2021, upon the Commissioner's consent motion for remand, the Honorable Deborah L. Boardman ordered remand of the matter to the SSA. (R. 1660–65, 1674). On remand, the Appeals Council instructed the ALJ to further evaluate Plaintiff's maximum residual functional capacity as it relates to certain limitations and to provide appropriate rationale with specific references to record evidence. (R. 1662–63). On December 2, 2021, the ALJ held a telephone hearing where Plaintiff was represented by Mr. Mathis and Gary Young, an impartial vocational expert, testified. (R. 1551–85). On February 16, 2022, the ALJ issued her decision concluding that Plaintiff was not disabled before she turned 55 years old on November 9, 2020, but that she became disabled within the meaning the Social Security Act on her 55th birthday and continued to be disabled through the date of the decision. (*Id.*) The ALJ thus rejected Plaintiff's contention that she was under a disability and entitled to benefits since September 3, 2014. (*Id.*) Plaintiff filed this civil action seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g).

## II.   SSA'S DECISION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. 1382c(a)(3)(A). In determining Plaintiff's disability claims, the ALJ followed the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

If the first three steps do not yield a conclusive determination of disability, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering all of the claimant's medically determinable impairments, regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 3

When mental impairments are alleged, the ALJ must apply the "special technique" to determine the severity of the mental impairments. 20 C.F.R. § 404.1520a. The ALJ is required to rate the limitations in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (known as "paragraph B criteria" for mental disorders). *Id.* § 404.1520a(c)(3). The ALJ uses a five-point scale to rate a claimant's limitations in these functional areas: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). The rating is based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 404.1520a(c)(2). If rating of a limitation is "none" or "mild," then the ALJ generally concludes that the mental impairment is not severe. *Id.* § 404.1520a(d)(1).

Here, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, September 3, 2014. (R. 1557). At step two, the ALJ found that since the alleged onset date, Plaintiff had the following severe impairments: degenerative joint disease ("DJD") of the bilateral knees, right shoulder disorder and acromioclavicular ("AC") joint arthritis, respiratory disorder, obesity, major depressive disorder ("MDD"), bipolar disorder, post-traumatic stress disorder ("PTSD"), and anxiety. (*Id.*) At step three, the ALJ determined that these impairments or combination of impairments did not meet or equal the severity of any impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1559).

Then, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she was further limited as follows:

> [Plaintiff] is further limited to occasionally climbing ramps and stairs but never climbing ladders, ropes, or scaffolds. She is limited to occasionally balancing, stooping, kneeling, crouching and crawling. She can frequently push, pull, and reach in front, laterally and overhead with the dominant, right, upper extremity. There can be no exposure to hazards, such as unprotected heights or dangerous machinery. She can have no concentrated exposure to fumes or other pulmonary irritants. She is further limited to understanding, remembering, and applying simple and routine instructions and attending and concentrating for extended periods with simple and routine tasks at work that is not at production rate pace (meaning no strict production requirements or rapid assembly line work where co-workers are side by side and the work of one affects the work of others). She can occasionally interact with the general public, coworkers and supervisors, can make simple, work related decisions, and can have few changes in the routine work setting.

(R. 1563). At step four, the ALJ concluded that since September 3, 2014, Plaintiff's alleged onset date, Plaintiff has been unable to perform any past relevant work. (R. 1571). At step five, the ALJ found that on November 9, 2020, when Plaintiff turned 55 years old and her age category became Advanced, she became disabled under Medical-Vocational Rule 202.04. (R. 1572). The ALJ considered Plaintiff's age, education, work experience, and RFC prior to November 9, 2020, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) Thus, the ALJ concluded that Plaintiff was not under a disability, as

3

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 4

defined in the Social Security Act, prior to November 9, 2020.

### III.    STANDARD OF REVIEW

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (citation omitted).

### IV.    DISCUSSION

Plaintiff contends that the Defendant's final decision is not supported by substantial evidence. (ECF 11 at 3). Specifically, Plaintiff challenges the ALJ's RFC analysis and conclusion. (ECF 11 at 8). Plaintiff reasons that the ALJ did not satisfy the RFC analysis requirements under Social Security Ruling ("SSR") 96-8p, which requires a function-by-function analysis of the functions described in 20 C.F.R. § 404.1545 and narrative discussion of how the evidence supports each conclusion. (ECF 11 at 10–11).

#### a.  ALJ's Opinion

The Court begins with analyzing the portion of the ALJ's decision assessing record evidence of physical and mental impairments as it relates to the ALJ's determination of Plaintiff's RFC. Prior to determining Plaintiff's RFC, the ALJ considered all symptoms and other evidence from medical opinions and administrative medical findings as required under 20 C.F.R. § 404.1520(c) and § 416.920(c).

The ALJ discussed the Plaintiff's subjective allegations of mental and physical impairments and noted that the allegations were inconsistent with other evidence in the record. (R. 1564). The ALJ found that Plaintiff's testimony, her treatment regime, and the objective medical evidence were inconsistent with her general claim of disability before turning 55 years old. (*Id.*) Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the record as a whole suggested that "her symptoms are likely not as significant as alleged." (*Id.*) For example, regarding Plaintiff's alleged physical impairments, "she testified she needs help with many activities of daily living[,]" but other evidence showed that "she does not have significant trouble" handling her own personal care and performing household chores. (*Id.*) The ALJ also noted how the Plaintiff failed to adhere to treatment consistently even though her daughter was able to care for her four times a week and provided transport to medical appointments. (R. 1565).

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 5

The ALJ acknowledged that the medical evidence supports Plaintiff's diagnoses of: (1) degenerative joint disease ("DJD") of the bilateral knees; (2) right shoulder disorder and acromioclavicular ("AC") joint arthritis; (3) respiratory disorder; (4) diabetes; and (5) obesity. However, based on the medical evidence, the ALJ found that these physical ailments were not as severe as Plaintiff alleged. (R. 1656). The ALJ reviewed multiple records showing that Plaintiff had generally normal ambulation without adhering to recommended treatment for her DJD. (R. 1215–16, 1226, 1243, 1565, 1566, 2067–68, 2125–28). Her DJD also did not meet the severity requirement under Listing 1.18, as she did "not have a documented need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device…." (R. 1559). Then, the ALJ evaluated records concerning Plaintiff's right shoulder. (R. 1566–67). The ALJ noticed that despite Plaintiff's subjective complaints and confirmed diagnosis of right shoulder disorder and AC joint arthritis, she did not seek any surgical treatment as recommended. (R. 1216, 1566–67, 2116, 2143–44). The ALJ found that the evidence failed "to demonstrate the claimant's inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements…." (R. 1559). As for Plaintiff's alleged respiratory disorder, records from 2014 to 2021 showed normal lung functioning and no deficits. The ALJ also noted that, "[d]espite her alleged shortness of breath, however, the claimant reported walking for exercise." (R. 1565). As for Plaintiff's diabetes diagnosis, she presented "no evidence of end organ damage or complications from her diabetes[.]" (R. 1559). Lastly, the ALJ found that Plaintiff's obesity "significantly limits the ability to perform basic work activities but does not meet or equal the severity of one of the listed impairments." (R. 1561).

After evaluating the objective medical evidence, the ALJ and gave some weight to various reports concerning Plaintiff's physical and mental impairments. The ALJ does not need to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a claimant's medical source." 20 C.F.R. § 404.1520c(a). Rather, the ALJ can consider medical opinions and prior administrative medical findings using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with other evidence in the claim and understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ explained that she afforded great weight to the two state agency physicians opinions showing that Plaintiff is limited to light work:

> The undersigned affords generally great weight to the State agency consultants'
> findings initially and upon that the claimant is limited to light work, with upper

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 6

extremity right side limitations in pushing and pulling, occasional climbing of ramps and stairs but can never climb ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; limited on the right upper extremity in front, laterally and occasional overhead reaching. *The undersigned finds that these limitations are generally consistent with the medical evidence of record initially and upon reconsideration, and they are consistent with the facts, including the lack of follow up with conservative treatment for the claimant's knee (physical therapy) and rotator cuff (surgery recommendation).* Upon reconsideration, all physical limitations were the same as the initial assessment, except the claimant was limited to right upper extremity in front and laterally and can frequently reach overhead. These assessments are also consistent generally with one another. (Exhibits 1A, 2A, 5A, and 6A). The undersigned finds frequent reaching limitations, rather than occasional, based upon the claimant's strength as indicated at 5/5 generally throughout, and no indication of atrophy, which supports that, despite the right upper extremity impairment, the claimant has continued to use her right upper extremity on a regular and consistent basis throughout this long period at issue.

(R. 1568 (emphasis added); *see also* R. 197, 210).

### b. ALJ's RFC Analysis

Plaintiff claims that the ALJ failed to perform a function-by-function assessment of Plaintiff's ability to perform the physical and mental demands of work, did not provide any logical explanation for the chosen RFC limitations, and that the omission of a narrative explanation from the ALJ's decision is a material error that precludes judicial review.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). The RFC assessment represents the most a claimant can do despite any physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). Thus, when an ALJ assesses a claimant's RFC, she is expressing it in terms of the claimant's maximum remaining ability to perform sustained work. *See* SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment must be based on all the relevant evidence in the case record, such as: medical history; medical signs and laboratory findings; treatment records; reports of daily activities; lay evidence; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *See* SSR 96-8p, 1996 WL 374184, at *5. But age and body habitus are not factors in assessing RFC. *Id.* at *1.

"In performing this assessment, an ALJ 'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). "In other words, the ALJ must both identify evidence that supports [their] conclusion and 'build an accurate and

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 7

logical bridge from [that] evidence to [their] conclusion.'" *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). The ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A., July 2, 1996). The ALJ is required to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96- 8p, 1996 WL 374184, at *1. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

Here, the ALJ's RFC assessment followed the guidance from SSR 96-8p and was based on her analysis of the evidence in the record, which she summarized and analyzed in narrative form in her decision. (R. 1563–71). As discussed above, the ALJ summarized and examined Plaintiff's symptoms consistent with the medical records and medical opinions. Plaintiff relies on *Mascio* to argue that the ALJ's failure to conduct a function-by-function analysis requires remand. However, there is no *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function assessment. *Mascio*, 780 F.3d at 636. In *Mascio*, the court agreed that "a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* Unlike in *Mascio*, where the ALJ failed to address conflicting evidence and left the court "left to guess about how the ALJ arrived at his conclusions[,]" the ALJ here thoroughly considered both subjective evidence and objective medical evidence relevant to Plaintiff's RFC while weighing the inconsistencies.

Moreover, the ALJ gave significant weight to the opinions of state agency physicians who described Plaintiff's limitations on a function-by-function basis. "[A]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015); *see also Sineath v. Colvin*, No. 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016). Here, the ALJ satisfied the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants. (R. 1568). The state agency physicians had assessed Plaintiff's work-related limitations on a function-by-function basis, and their reports reflect detailed findings Plaintiff's exertional and postural limitations, including Plaintiff's capacity to sit, stand, walk, lift, and carry. (R. 162–83, 186–211). "The ALJ was not required to repeat these findings verbatim." *Sineath*, 2016 WL 4224051, at *5 (quoting *Wilds v. Colvin*, No. 1:13CV318, 2015 WL 339643, at *9 (M.D.N.C. Jan. 23, 2015)).

As to Plaintiff's mental RFC limitations, the ALJ found that her diagnoses of MDD, bipolar disorder, PTSD, and anxiety present moderate limitations to her ability to maintain concentration, persistence, or pace. (R. 1562, 1567, 1570–71). Plaintiff incorrectly states that the ALJ found these mental impairments to cause severe limitations maintaining concentration persistence or pace. (ECF 11 at 17). Referencing mental examination results, the ALJ explained how Plaintiff's mental RFC was limited to "understanding, remembering, and applying simple and routine instructions and attending and concentrating for extended periods with simple and routine tasks at work that is not at production rate pace…." (R. 1563). Additionally, the ALJ noted how Plaintiff's records showed normal mental status and functioning. (R. 1567).

Towards the end of the ALJ's mental RFC analysis, she noted that Plaintiff's moderate

*Vernia H. v. Kijakazi*
Civil No.: 1:22-CV-02126- MJM
August 21, 2023
Page 8

limitation in concentration, persistence, or pace required an impact assessment on Plaintiff's "ability to stay on task at an adequate pace for an eight-hour work day[.]" (R. 1571). The ALJ recognized that "a restriction to carrying out simple and routine tasks that are not performed at production rate pace does not on its face address" concentration or persistence concerns. (*Id.*) On this issue, the ALJ noted first that there was "little support" specifically for concentration and persistence concerns in the record, pointing out which reflects Plaintiff's "usually intact attention and concentration[,]" activities that require "mental focus and stamina," and Plaintiff's "conservative and inconsistent care[.]" (*Id.*) Second, the ALJ noted that employees are "generally entitled to breaks after every two hours of work[,]" which would address any concentration or persistence issue. (*Id.*) Third, "simple and routine tasks" would not require the level of concentration and persistence as more complex or detailed work. (*Id.*) Plaintiff characterization of the ALJ's final discussion regarding Plaintiff's moderate limitation in concentration, persistence, or pace as "meaningless dicta" and "lacking any logical explanation" (ECF 11 at 18–20), is unsupported.

The ALJ's physical and mental RFC determination is supported by substantial evidence in the record. The ALJ properly examined record evidence of Plaintiff's impairments and explained how she reached her conclusions about Plaintiff's functioning, with citation to the medical opinions she considered and upon which she relied. (R. 1564–65).

V.   **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

A separate implementing Order follows.

Sincerely,

/s/
Matthew J. Maddox
United States Magistrate Judge